The facts sufficiently appear in the opinion.
This is an action for the recovery of delinquent taxes assessed against the real and personal property of the defendant situated in Lander county. Included in the list of assessed property is a large quantity of unsurveyed land. The principal question in the case is whether land of this character is taxable or not. These lands were acquired by the railroad company under acts of congress of July 1, 1862, and July 2, 1864. The act of July 2, 1864, provides as follows: "Sec. 21. That before any land granted by this act shall be conveyed to any company or party entitled thereto under this act, there shall first be paid into the treasury of the United States the cost of surveying, selecting, and conveying the same, by the said company or party in interest as the title shall be required by said company, which amount shall, without any furtner appropriation, stand to the credit of the proper account, to be used by the commissioner of the general land office for the prosecution of the survey of the public lands along the line of railroad, and so from year to year, until the whole shall be completed, as provided under the provisions of this act." (13 U. S. Stat. at Large, 365.)
In the case of Railway Co. v. McShane,
22 Wall, 462, the court, in considering this provision, said; "That the payment of these costs of surveying the land is a condition precedent to the right to receive the title from the government can admit of no doubt. Until this is done, the equitable title of the company is incomplete. There remains a payment to be made to perfect it. There is something to be done, without which the company is not entitled to a patent. The case, clearly, is not within the rule which authorizes state taxation of lands, the title of which is in the United States.
The reason of this rule is also fully applicable to this case. The United States retains the legal title by withholding the patent, for the purpose of securing the payment of these expenses, and it can not be permitted to the states to defeat or embarrass this right by a sale of the lands for taxes. If such a sale could be made, it must be valid if the land is subject to taxation, and the title would pass to the purchaser. If no such title *Page 99 
could pass, then it is because the land is not liable to the tax; and the treasurers of the counties have no right to assess it for that purpose.
But when the United States parts with her title, she has parted with the only means which that section of the statute gives for securing the payment of these costs. It is by retaining the title that the payment of costs of survey is to be enforced. And, so far as the right of the state to tax the land is concerned, we are of opinion that, where the original grant has been perfected by the issuance of the patent, the right of the state to tax, like the right of the company to sell, the lands, has become perfect."
Again, in the case of Railroad Co. v. TraillCo., 115 U. S. 607, these principles were reaffirmed. Said the court: "In the case of Railway Co. v.Prescott, which was a writ of error to the supreme court of Kansas, this court held these lands could not be assessed and sold for taxes under state laws until this cost of surveying them was paid to the United States, because the government retained the legal title to the same to compel this payment. This case was decided in 1872. In 1874, the case of Railway Co. v. McShane came before us, involving the same question, and because it also involved some other points decided in Railway Co.
v. Prescott, which the court reconsidered and overruled, it necessarily received full consideration, the result of which was to reaffirm the proposition that, until the United States was reimbursed for the expenses of the survey of those lands, they were not subject to state taxation."
Advantage was taken of this interpretation of the law to escape taxation by neglecting to pay the costs of surveys. To obviate the difficulty, congress enacted "that no lands granted to any railroad corporation by any act of congress shall be exempt from taxation by states, territories and municipal corporations, on account of the lien of the United States upon the same for the costs of surveying, selecting and conveying the same, or because no patent has been issued therefor; but this provision shall not apply to lands unsurveyed." (U. S. Stat. at Large, 1886, p. 143.)
This is the only enactment of congress waiving the lien of the government upon railroad lands for the purpose of state taxation. A reason for withholding the right to tax unsurveyed lauds may be found in the fact that it is impracticable to assess them. It is a well-established principle of law that land assessed *Page 100 
for the purpose of taxation must be so described that it may be identified. The purposes of this requirement, as stated by Judge Cooley, are: "First, that the owner may have information of the claim made upon him or his property;second, that the public, in case the tax is not paid, may be notified what land is to be offered for sale for the non-payment; and, third, that the purchaser may be enabled to obtain a sufficient conveyance." (Cooley, Tax'n. 284.)
The lands granted to the railroad company were the odd-numbered sections within the limits of twenty miles on each side of the railroad, except such as had been sold or otherwise disposed of by the United States, or to which a homestead or pre-emption claim had attached, or mineral lands. Until the surveys are made it cannot be known what parts of the lands are within the enumerated exceptions, nor what sections or parts of sections will belong to the company, nor until then, can the locality of the lands be determined so that a description may identify them. The exemption enforces the principle that lands may not be assessed for taxation unless described so that they may be found. It is said, however, that the possessory interest of the defendant is taxable under the revenue laws of the state, independently of the land itself, or the title to it. It must be borne in mind that the unsurveyed lands are not described by metes and bounds, or by common designation or name, but as sections and parts of sections, and, as alleged by the complaint, "as their designation will appear when the surveys of the United States are extended over them."
It is plain that this is not a description by which the identity of the lands can be established, and it is equally plain that possession of lands so described cannot be established until the surveys are made. The reasons suggested as having induced congress to exempt unsurveyed lands from taxation will exclude a possessory interest in such lands from taxation when described only "as their designation will appear when the surveys of the government are extended over them."
The answer of defendant alleges tender and payment of the tax imposed upon all of the assessed property described in the complaint other than lands. Defendant had the right, under the statute (Gen. Stat. Sec. 1096) to pay the taxes upon any subdivision of its property entered upon the assessment roll. And no judgment for taxes or penalties should be entered against *Page 101 
defendant by reason of its ownership of property, the taxes upon which have been paid in conformity with this provision of the statute.
A motion has been made in this court to amend the record by striking out a pleading entitled "Amendment to Answer." The motion is denied upon the authority of the following cases:Satterlee v. Bliss, 36 Cal. 521;People v. Romero, 18 Cal. 93;Boston v. Haynes, 31 Cal. 107;Bonds v. Hickman, 29 Cal. 464;Boyd v. Barrel, 60 Cal. 280. A similar answer was considered insufficient in the case ofPeople v. Pearis, 37 Cal. 259. It is unnecessary for us, however, to rule upon the point, as the complaint states the facts upon which our decision is based.
Judgment reversed, and cause remanded.