Meeker *v.* Executor of Vanderveer.

---

## FRANCIS MEEKER v. EXECUTOR OF VANDERVEER.

Auditors appointed under the 2d *Section* of the act for the more speedy recovery of legacies, &c. *Rev. Laws*, 51, have no power to review the proceedings of the Orphans' Court, or to alter, or restate an account, which has been settled in that court ; but they may make allowances and give credit to the executor for lawful disbursements made by him, subsequent to the settlement in the Orphans' Court.

When executors appear to have acted right, he who would impeach their conduct, must show fraud, or mistake, or that they have acted without authority, or contrary to law. An executor may compromise a law suit, he may buy the peace of the estate he represents, and extinguish doubtful claims against it, provided he acts discreetly and in good faith.

---

This was an action of debt for a legacy, brought in this court. The facts of the case are fully detailed in the opinion of the court, delivered by the CHIEF JUSTICE.

Meeker *v.* Executor of Vanderveer.

*Hartwell,* for plaintiff.

*W. Thomson,* for defendant.

HORNBLOWER, C. J. The defendant having pleaded, want of assets to pay, &c., this court in the term of May, A. D. 1834, on motion of the plaintiff's counsel, appointed Oliver S. Halsted, John M. Mann and William H. Lupp, Esquires, auditors, to examine the accounts, &c. pursuant to the directions contained in the 2d *Section* of the act, for the more speedy recoveries of legacies, &c. *Rev. Laws,* 50. On the 2d August 1834, the auditors reported in writing to this court, that there remained on that day in the hands of the said surviving executor, the principal sum of seventy-five dollars, sixty-nine cents, of the assets of the testator's estate; which with interest thereon, up to the date of the said report, amounted to the sum of one hundred and sixty-five dollars, twenty-nine cents, the whole of which, ought to go towards satisfying the balance due on the legacy, demanded in this action. And they further reported, that the defendant had not been faulty, (see *Section* 4, *Rev. Laws,* 51,) in delaying to pay the balance in his hands, he having been led by an indorsement made on his account, by one of the Judges of the Orphans' Court, to suppose he had in truth fully administered the said estate.

In September term 1834, the plaintiff's counsel took a rule to show cause, why this report should not be set aside, and has filed various exceptions to the same, as reasons for doing so.

Upon the argument of the rule, the grounds principally relied upon in its support, were these, viz: that the auditors had allowed to the defendant, the benefit of one payment of six hundred and two dollars, ninety-one cents, with interest, amounting in the whole to eight hundred and fifty-two dollars, sixty cents, made by him to John Frelinghuysen, surviving executor of James Vanderveer, deceased, and a further sum of one hundred dollars, also paid by the defendant to the said surviving executor of James Vanderveer, for the purpose of compromising a certain suit in Chancery, mentioned in the said report.

Upon inspecting the documents exhibited by the parties, and from what was stated by the counsel on the argument, it

appears, that the defendant, as surviving executor of Henry S. Vanderveer, settled his account before the Orphans' Court, of the county of Somerset, on the 3d January 1817, when the court decreed a balance in his hands of ten hundred and twenty eight dollars, twenty-nine cents. This purports to have been a final account and settlement of the estate, upon due notice thereof, by advertisement in the manner prescribed by law, *prima facia* therefore, the defendant would be chargeable with that balance and interest on the same, from the date of that decree, until this time. But it further appears, that the defendant's testator, Henry S. Vanderveer, together with William McEowen and John Frelinghuysen, had been executors of the last will and testament of James Vanderveer, deceased, the father of the said Henry S. Vanderveer. That in making the inventory of the estate, of the said James Vanderveer, certain United States stock, or certificates belonging to the said estate, had been estimated and appraised at three thousand three hundred and sixty-eight dollars, thirty-five cents, when in fact, they were worth only two thousand three hundred and seventy-four dollars, seventy-two cents, or in other words, at nine hundred and ninety-three dollars, seventy two cents, more than their true value. That upon a settlement of the accounts of the said executors of James Vanderveer in the Orphans' Court, based upon the erroneous inventory so made, there was decreed to be in the hands of the said executors, in October 1811, a balance of five thousand five hundred and eighty-one dollars, eighty-three cents, to be distributed according to the will. That Henry S. Vanderveer, the defendant's testator, being entitled under the will of his father, James Vanderveer, to a distributive share of his estate, and being one of his executors, received from John Frelinghuysen and William McEowen, his co-executors, or retained in his hands, his full share, namely, one-third of the said estate, upon the foot of the said account, and consequently more than he was entitled to. That the said Henry S. Vanderveer afterwards died, leaving the defendant, and one Thomas Nesbitt, whom the defendant has survived, his executors. That after the defendant as such surviving executor of the said Henry S. Vanderveer, had in manner aforesaid, on

Meeker *v.* Executor of Vanderveer.

the 3d January 1817, exhibited and settled his account, showing a balance against himself of ten hundred and twenty-eight dollars, twenty-nine cents, John Frelinghuysen, the surviving executor of James Vanderveer, having discovered the aforesaid error, in the inventory and settlement of his testator's estate, and having made some further disbursements on account thereof, called upon the defendant, as surviving executors of Henry S. Vanderveer, to refund the amount received, or retained by the said Henry S. Vanderveer, over and above his just proportion of his said father's estate; that thereupon the defendant, on the 1st of September 1817, re-paid to the said John Frelinghuysen, the sum of eight hundred and fifty-two dollars, sixty cents, that being the excess, including the interest thereon, retained by the said Henry S. Vandeveer, over and above his distributive share of his father's estate.

For this payment, thus made, the auditors have thought proper to make the defendant an allowance, and to deduct the same from the balance of one thousand and twenty-eight dollars, twenty-nine cents, decreed to be in his hands on the settlement of his account on the 3d January 1817: and upon the facts above stated, it appears to me, such allowance was just and reasonable.

The fact of the re-payment by the defendant, of that sum, does not seem to be disputed. The defendant exhibited before the auditors, and upon the argument of this rule, a statement made by John Frelinghuysen, showing the error in the appraisement of the United States certificates, and the amount of further disbursements made by him since the settlement of his account in the Orphans' Court, upon the foot of which it appears, that Henry S. Vanderveer, the defendant's testator, had received, or retained in his hands, on the 1st October 1811, six hundred and two dollars, ninety-one cents too much, which with interest thereon from that time, until the 1st September 1817, amounted to eight hundred and fifty-two dollars, sixty cents, which sum the defendant paid to the said John Frelinghuysen, on the day last mentioned, as appears by his receipt therefor annexed to the said statement. It further appears, by another exhibit produced by the defendant, that on the 22d April 1819, John

Frelinghuysen, as surviving executor of the said James Vanderveer, exhibited an additional or supplementary account of the estate of his said testator, charging himself with the said balance of five thousand five hundred and eighty-one dollars, eighty-three cents, found to be in his hands upon the foot of the former account settled by him; and praying allowance for the error in the value of the certificates aforesaid; and for the said further disbursements made by him since the stating of the former accounts; which allowances were made by the Orphans' Court, and the distributive fund or balance found and decreed to be only three thousand one hundred and seventy-two dollars, fifty-nine cents, instead of five thousand five hundred and eighty-one dollars, eighty-three cents, as on the foot of the former account.

It is objected, that however just this allowance to the defendant, may be, the auditors erred in making it, because the defendant was concluded by his account, rendered and passed in the Orphans' Court on the 3d January 1817. That until the decree upon that account had been set aside or reversed by some competent court, or the account, opened and re-stated by the Orphans' Court, upon the ground of fraud or mistake, the defendant was bound by it. That he should have sought to have had it corrected by the proper tribunal, and ought not to have been permitted, before the auditors, to impeach or vary the account stated; the auditors appointed by this court having no power to review the proceedings of the Orphans' Court, or to re-state the account settled and established by them. But this objection is not well taken: the auditors have not reviewed or reversed the decree of the Orphans' Court. On the contrary, they have made it the basis of their report; by charging the defendant with the amount decreed against him, and only giving him credit for disbursements, since made by him out of that balance. Whether those disbursements were *actually*, and *rightfully* made, were questions to be settled by the auditors, subject to the review of this court; and the inquiry now is, whether the auditors in coming to the decision they have made, were influenced by legal principles, and competent evidence. I cannot perceive that they have erred in either particular:

the allowance by the Orphans' Court, of the new or additional account of John Frelinghuysen, of the 22d April 1819, correcting the error in the valuation of the certificates, and claiming a credit for further disbursements, so long as that account remained unimpeached, was upon the plaintiff's own principles, conclusive, not only on John Frelinghuysen, but on all persons interested in his testator's estate ; consequently, it was binding on the defendant, as surviving executor of Henry S. Vanderveer. This account, and the decree. of allowance thereof, were in evidence before the auditors, and were clearly sufficient to satisfy them that the defendant had rightfully refunded the money in question, until the contrary should be proved. It seems to me, that this, among others, is one of the very cases contemplated by the act of Assembly. Of what use would be the reference to auditors, if they are not to make just and equitable allowances, subsequent to a settlement of the accounts in the Orphans' Court?

The 2d objection appears to me to be equally untenable. By a document exhibited on the hearing, and signed by three persons admitted to be heirs of James Vanderveer, and by the defendant as executor of Henry S. Vanderveer, who it will be remembered, was one of the heirs or persons entitled to a distributive share under the will of James Vanderveer, it appears, that James Vanderveer had sold some lands to one Orendorf in Virginia : that Orendorf held back, and refused to pay a portion of the consideration money on the ground of a dispute about the title of a part of the lands ; and that the several persons subscribing the said document, which bears date the 13th September 1813, authorised the executor of James Vanderveer, to appropriate the sum of four hundred and fifty dollars, to extinguish that claim and settle the dispute. For this sum the said John Frelinghuysen also claimed allowance in his supplementary accounts. Also, for two hundred dollars, paid for taxes on lands, in the State of New York ; for forty dollars, seventeen cents, error in calculation on a certain note given by said Orendorf, for one hundred and twenty-five dollars, thirty-five cents ; costs and counsel fees in a suit in Chancery, pending against

the executors of James Vanderveer; and for six hundred dollars, which it is stated in the said supplemental accounts, had been agreed among the heirs of the last named testator, should be paid by the executors, in compromise of the said suit in Chancery. All these items were allowed by the Orphans' Court on the settlement of the said supplemental account, and together with the nine hundred and ninety-three dollars, seventy-two cents, the excess on the value of the United States certificates, amounted to two thousand four hundred and nine dollars, twenty-four cents; thus reducing the balance of five thousand five hundred and eighty-one dollars, eighty-three cents, found due from the executor, on the foot of the former account in 1811, to three thousand one hundred and seventy-two dollars, fifty-nine cents.

Now the second objection is, that the auditors allowed the defendant a credit of one hundred dollars, paid by him to the surviving executor of James Vanderveer, on the 1st September 1817, to be appropriated to the adjustment, or compromise of a certain suit then depending in the Court of Chancery, between the heirs of John Vanderveer, deceased, and the executors of the said James Vanderveer. That this money was paid, does not seem to be denied. In proof of it, the defendant produces John Frelinghuysen's receipt, specifying the object for which it was paid. But it is said, that the defendant paid this money in his own wrong; that he was under no legal obligation to do so, and ought not therefore, to receive any allowance for the same. If however, the defendant as executor of Henry Vanderveer, was *equitably* bound to contribute to an extinguishment of the claim, for which the suit had been brought, it was sufficient to justify the payment. The suit was against the executors of James Vanderveer, and the defendant's testator was one of those executors; his estate was therefore, it may be fairly presumed, ultimately responsible, at least in part, for the matter in dispute. The contrary is not shown; and where an executor appears to have acted right, he who would impeach his conduct, must show fraud, or mistake, or that he has acted without authority, or contrary to law. Now, an executor may compro-

mise a law suit; he may buy the peace of the estate he repre-sents, and extinguish even doubtful claims against it, provided he acts discreetly and in good faith.

But the auditors were not without authority to sanction this claim of the defendant; for in the settlement of the subsequent account of John Frelinghuysen, surviving executor of James Vanderveer, on the 22d of April 1819, the Orphans' Court allowed him for six hundred dollars, appropriated by him, with the consent of the parties interested, to the settlement and compromise of that suit.

Upon the whole, I can see no error in all this; no reason for setting aside the auditor's report. The rule to show cause must therefore be discharged with costs.

FORD, J. and RYERSON, J. concurred.